MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2016 ME 40
Docket:        Ken-14-491
Argued:        November 5, 2015
Decided:       March 8, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and
               HUMPHREY, JJ.


STATE OF MAINE

v.

DESIRAY A. POULIN


HJELM, J.

[¶1]  Desiray A. Poulin appeals from a judgment of conviction for theft by unauthorized taking or transfer (Class C), 17-A M.R.S. § 353(1)(B)(6) (2015),[1] entered by the trial court (Kennebec County, *Mullen, J.*) after a jury trial.  The sole issue presented is whether the court erred by finding that the State had presented sufficient evidence of the corpus delicti to allow the admission of evidence of Poulin's out-of-court incriminating statements.  We affirm.

I.  BACKGROUND

[¶2]  We view the evidence presented at trial in the light most favorable to the State.  *See State v. Fundalewicz*, 2012 ME 107, ¶ 2, 49 A.3d 1277.

---

[1]  A person is guilty of the Class C crime of theft by unauthorized taking or transfer if "[t]he person obtains or exercises unauthorized control over the property of another with intent to deprive the other person of the property . . . [and] has 2 or more prior convictions for . . . theft."  17-A M.R.S. §§ 353(1)(A), (B)(6) (2015).

2

[¶3]  On April 11, 2013, the victim placed an Internet order for the purchase of a cellular telephone.  The phone, which cost approximately $150, was to be delivered by FedEx to the victim's residence in Waterville seven to ten days after the date he ordered it.  The victim did not receive the package as scheduled and eventually reported the matter to the Waterville Police Department, along with his suspicion that Poulin stole the phone.  An investigator with the police department spoke with Poulin, who eventually admitted that she took the phone and threw it into the Kennebec River.

[¶4]  In July 2013, Poulin was charged by complaint with theft by unauthorized taking, which was enhanced to a Class C charge based on allegations of two prior convictions for theft.  *See* 17-A M.R.S. § 353(1)(B)(6).  After Poulin was indicted in January 2014 and pleaded not guilty, the court held a one-day jury trial in September 2014.  There, the State presented the following evidence that bears on Poulin's corpus delicti challenge.  The victim lives in a three-unit apartment building that has two porches.  The entry to his apartment is off of one porch, and the other porch provides access to the other two apartments.  Approximately one month after he placed the order for the telephone, the victim checked with the residents of one of the other apartments about the missing package.  The victim also testified that when the delivery became overdue, he had inquired of FedEx about the status of the order and was told that the package had

been delivered.[2]  He then went to the local police department and filed a theft complaint.  The court admitted the victim's testimony about the status of the FedEx order for the limited purpose of explaining the victim's understanding of the situation and not to prove the truth of the information provided to him by FedEx.

[¶5]  The State also presented testimony from the police officer who took the victim's complaint.  The officer testified that the victim told him that he had "learned of a person who had potentially signed for – for the phone."  Then, for the sole purpose of explaining what information was given to the officer, the court allowed the officer's further testimony that the victim identified Poulin as the person who took delivery of the package.  The officer's testimony continued with his statement that according to the victim, the neighbors "had knowledge" that Poulin signed for the package.  The court sustained Poulin's objection to that testimony and instructed the jury to disregard it.  The officer then described his interview with Poulin where, after initially denying any responsibility for the missing package, she admitted that she signed for the package when it was

---

    [2]  The State presented the testimony of the FedEx delivery driver, who testified that he delivered the package to the building where the victim lived.  He further stated that Poulin signed for the delivery and that he asked her to let the victim know of the delivery.

    By agreement of the parties, the court did not consider the driver's testimony in determining whether the State presented sufficient evidence of the corpus of the crime.  The State had provided a late disclosure that it might call the driver as a witness, and one of the jurors may have known him.  As an apparent compromise on the question of whether the driver would be allowed to testify at all, the parties agreed that he could testify but that the sufficiency of the State's corpus evidence would be measured without reference to that testimony.  The court accepted that accommodation and made clear that its ruling on Poulin's corpus challenge was without regard to the driver's testimony.

4

delivered, took the package, and threw it off a bridge so that she would not be caught.

[¶6]   Before the officer testified about Poulin's incriminating statements, Poulin moved to exclude that evidence on the ground that the State had not presented sufficient corpus delicti evidence.  The court provisionally denied Poulin's motion and admitted the officer's testimony *de bene*, subject to further consideration of Poulin's argument.  Later in the trial, the issue was joined again, and the court ruled definitively that even without considering the driver's testimony that Poulin signed for the package, *see supra* n.2, the State had met its burden to show the commission of the crime independent of Poulin's admission and that evidence of her statements therefore was admissible.  The court reasoned that the State had met its burden to prove the corpus of the crime with evidence that the victim ordered the cellular telephone but that it was not delivered; that the victim, after checking with FedEx, believed that it had been delivered; and that when the victim asked about the missing package, the neighbors gave him someone's name.

[¶7]  The jury returned a guilty verdict, which, when combined with Poulin's stipulation that she had been convicted twice of theft as alleged, was for a Class C crime.   At a hearing held in October 2014, the court sentenced Poulin to a sixteen-month prison term, with all but thirty days suspended and two years of

probation, and restitution of $157.49 for the value of the telephone. Poulin timely appealed.

## II. DISCUSSION

[¶8] The corpus delicti doctrine requires the State to present evidence, independent of incriminating statements made by an accused, sufficient to create a "substantial belief" that the crime alleged was committed by somebody.[3] *Fundalewicz*, 2012 ME 107, ¶ 8, 49 A.3d 1277. The purpose of the rule is to prevent convictions based solely on the inculpatory statements of a defendant and to provide some measure of assurance that no one will stand convicted of a crime without independent evidence that a crime occurred. *Id.*; *State v. Knight*, 2002 ME 35, ¶ 10, 791 A.2d 110; *State v. Bleyl*, 435 A.2d 1349, 1367 (Me. 1981).

[¶9] The rule, which originates in the common law, *Fundalewicz*, 2012 ME 107, ¶ 8, 49 A.3d 1277, prescribes a foundational requirement for the admissibility of evidence of the accused's statements. The issue of whether the State has met its foundational corpus delicti burden affects whether other evidence may be admissible, and so the question of whether the predicate has been presented

---

[3] "Corpus delicti" means "body of the crime." *State v. Fundalewicz*, 2012 ME 107, ¶ 8, 49 A.3d 1277.

A second aspect of the corpus delicti doctrine requires the State to prove the commission of a crime beyond a reasonable doubt, based on consideration of *all* of the evidence, including any incriminating statements made by the accused. *See State v. Deschenes*, 2001 ME 136, ¶ 7, 780 A.2d 295. Poulin's argument does not extend to this principle but rather is limited to the question of whether the State's evidence, independent of her admissions, supported a "substantial belief" that a crime was committed.

6

is a preliminary one for the court. *See State v. Curlew*, 459 A.2d 160, 165 (Me. 1983) (stating that "[t]he trial judge is to evaluate the evidence" of whether the State has presented sufficient corpus delicti evidence necessary for admission of the defendant's incriminating statements); M.R. Evid. 104(a) ("Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court . . . .").[4]

[¶10]  Under Maine law, proof of a predicate to the admission of other evidence need not itself be based on admissible evidence.  M.R. Evid. 104(a) (in determining preliminary questions of admissibility, the court "is not bound by the rules of evidence except those with respect to privileges").  This means that a court may properly consider inadmissible evidence in determining whether the State has met its corpus delicti burden as the predicate to the admission of evidence of the defendant's incriminating statement.  *See* Field & Murray, *Maine Evidence* § 801.9 at 447 (6th ed. 2007) ("The question of whether or not the corpus delicti has been established as a pre-requisite to admission of statements by the defendant is a preliminary question for the court under Rule 104."); *see also Knight*, 2002 ME 35, ¶ 12, 791 A.2d 110 (holding that the "entire record of the

---

[4]  M.R. Evid. 104 was replaced effective January 1, 2015.  The new Rule eliminates the language regarding the applicability of the rules of evidence in preliminary determinations.  Rule 101 now sets forth all provisions regarding the applicability of the rules.  *See* M.R. Evid. 101, 104 (restyled Maine Rules of Evidence).  The restyled Rules do not affect the substance of the Rules they replace.

proceedings" is examined to determine if it contains sufficient corpus delicti evidence).

[¶11]  More fundamentally, in addition to the effect of Rule 104, the determination of whether a crime was committed may legitimately be based on evidence that happens to be inadmissible under those rules.  Therefore, in making its corpus determination, the fact-finder—which here is the court in its gatekeeper role—need not be limited to evidence that is competent under those rules.[5]

[¶12]  The quantum of evidence that the State must present to meet the corpus burden is "low."  *Fundalewicz*, 2012 ME 107, ¶ 9, 49 A.3d 1277.  The burden to show a "substantial belief" that a crime was committed is less than a preponderance of the evidence and "resembles" the probable cause standard.  *Id.*  A "substantial belief" that a crime was committed "exists where the facts and circumstances within the knowledge of the factfinder would warrant a prudent and cautious person to believe that the crime was committed by someone."  *Id.* (quotation marks omitted).  The burden may be satisfied inferentially.  *Id.* ¶ 11.

[¶13]  The "low" burden to prove the corpus of the crime is illustrated in *Fundalewicz*.  There, the State charged Fundalewicz with contacting her thirteen-year-old son in violation of a protection order.  *Id.* ¶¶ 2-4.  The corpus—

---

[5]  This conclusion is in accord with the approach taken in jurisdictions that charge the court with making a preliminary determination of whether the prosecution has presented sufficient evidence of the commission of a crime independent of a defendant's incriminating statements.  *See, e.g.*, *Leggett v. State*, 320 P.3d 311, 312 (Alaska Ct. App. 2014); *State v. Gerlaugh*, 654 P.2d 800, 806 (Ariz. 1982).

8

namely, the fact that Fundalewicz had contact with her son—was proven through evidence that while no one else was present, the son spoke with someone on the phone and later exhibited a "distressed reaction," prompting the son's father to call the police. *Id.* ¶ 12. We concluded that this evidence was consistent with Fundalewicz being the caller because no one else was prohibited from contacting him, and the evidence was inconsistent with the benign explanation later provided by the son that it was a cousin who had called him. *Id.* ¶¶ 5, 13. We affirmed the trial court's determination that the evidence supported a substantial belief that a crime was committed and allowed the fact-finder to consider evidence that Fundalewicz admitted making the telephone call. *Id.* ¶¶ 6, 14.

[¶14] Here, in determining that the State had met its burden to demonstrate the corpus of the crime, the court considered evidence that the victim had ordered the telephone; that he did not receive it as scheduled; that the carrier informed him that it had been delivered; that the victim made inquiry of other residents in his apartment building; that they gave him the name of someone; and that the victim complained to the police that the package was stolen.

[¶15] On appeal, we give deference to the court's factual findings, and we review de novo a determination that the State's evidence supported a "substantial belief" that a crime was committed. *Id.* ¶ 10.

[¶16]  The evidence supports the court's factual findings underlying its corpus delicti determination.  Then, in its application of those facts to the legal standard, the court did not err by concluding that the State met its burden to show a corpus delicti.  Even though some of the evidence relevant to its determination was presented to the jury subject to limiting instructions, the court—in its capacity as fact-finder to determine the preliminary question of whether the State had met its burden to show the corpus of the crime—was not itself subject to those limitations.  Poulin argues that the disappearance of a package in the transit stream and delivery process can be explained in ways that do not involve criminal activity and that to conclude otherwise is speculative.  Here, however, the court found that a representative of the carrier told the victim that the package in fact was delivered.  Further, the law allows a presumption that items properly placed into the delivery stream will be delivered.  *See Graybar Elec. Co. v. Sawyer*, 485 A.2d 1384, 1387 (Me. 1985).  Therefore, evidence that the victim did not receive a package that was to be delivered in the normal course—combined with evidence that it *was* delivered—provides at least some support for a "substantial belief" that there was misconduct after delivery.

[¶17]  Additionally, the evidence includes information that the victim, as the intended recipient, made inquiry of other residents of the building where the package was destined.  They are people who might be expected to have

information about the apparent problem, and the information they gave to the victim included someone's name. Based on that, the victim reported a theft of the package to the police. The court did not err by treating this as circumstantial evidence that the neighbors had information that someone took the package.[6] As in *Fundalewicz*, where the father made a report to the police based on particular information known to him, 2012 ME 107, ¶¶ 3, 13-14, 49 A.3d 1277, these circumstances—including the victim's official report of a crime, with supporting information—contribute to the State's proof that a crime was committed.

[¶18] We therefore conclude that the court did not err when it concluded that the State had presented evidence sufficient to support a substantial belief that someone stole the package sent to the victim, and, on that basis, admitted evidence of Poulin's out-of-court inculpatory statements.

The entry is:

Judgment affirmed.

---

[6] In its ruling, the court recited evidence that following his conversation with FedEx, the victim "believed" that someone took the package. As we clarify in this decision, in determining whether the State had presented sufficient evidence of the corpus of the crime, a court may consider evidence that is not admissible under the Maine Rules of Evidence. This means that the court could also have properly considered, without limitations arising from the application of the Rules, the victim's testimony that a FedEx agent told him that the package had been delivered (and not just that the victim "believed" that it had been delivered), and the officer's testimony that the victim told him that according to the neighbors, Poulin herself took the package.

**On the briefs:**

Jamesa J. Drake, Esq. Drake Law, LLC, Auburn, for appellant Desiray A. Poulin

Maeghan Maloney, District Attorney, and Tyler LeClair, Stud. Atty., Prosecutorial District IV, Augusta, for appellee State of Maine

**At oral argument:**

Jamesa J. Drake, Esq. Drake Law, LLC, Auburn for appellant Desiray A. Poulin

Emily Collins, Stud. Atty., Prosecutorial District IV, Augusta, for appellee State of Maine

Kennebec County Superior Court docket number CR-2013-625
FOR CLERK REFERENCE ONLY